Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Andres Navarro (SBN 358499)
anavarro@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FELIPE PANTONE, an individual;<br><br>Plaintiff,<br><br>v.<br><br>100% SPEEDLAB, LLC, a California corporation; Saule, LLC, a California corporation; and DOES 1-10,<br><br>Defendants. | Case No. **'25CV1490 BAS SBC**<br><br>COMPLAINT FOR COPYRIGHT INFRINGEMENT<br><br><u>Jury Trial Demanded</u> |

Plaintiff, F. Pantone Studio SLU, by and through its undersigned attorneys, hereby prays to this honorable Court for relief based on the following:

## JURISDICTION AND VENUE

1. This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*.

2. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a)-(b).

3. Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c) and 1400(a) because this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

1    4.    Plaintiff F. Pantone Studio SLU ("Pantone") is a limited company based in Valencia, Spain Upon information and belief, Defendant 100% SPEEDLAB, LLC, ("100%") is a California corporation with its principal place of business located at 4141 Ruffin Road, San Diego, California 92123.

5.    Upon information and belief, Defendant Saule, LLC, ("Saule") is a California corporation with its principal place of business located at 9630 Aero Drive, San Diego, California 92123.

6.    Upon information and belief, Defendants DOES 1-10 ("DOE Defendants") (collectively with 100% and Saule, "Defendants") are other parties not yet identified who have infringed Plaintiff's copyrights. The true names, whether corporate, individual, or otherwise, of DOE Defendants are presently unknown to Plaintiff, which therefore sues said DOE Defendants by such fictitious names and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

7.    Upon information and belief, Pantone alleges that each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants, and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, and/or employment; and actively participated in, subsequently ratified, and/or adopted each of the acts or conduct alleged, with full knowledge of each violation of Pantone's rights and the damages to Pantone proximately caused thereby.

## CLAIMS RELATED TO PLANTIFF'S ARTWORKS

8.    Felipe Pantone is a world-renowned professional artist known for his murals, artwork, and collections. Felipe Pantone utilizes bold color and 3-D modeling software to generate his enigmatic optical illusions. Pantone has exhibited his work in New York, London, Paris, Brussels, Hong Kong, and Madrid. Felipe Pantone's work has been used in collaboration with major brands like Zenith Watches, Don Julio Tequila, the car company Alpine, Krink, Puma, and

Henessey Cognac. As a professional artist, Felipe Pantone's commercial success and stability are dependent on the protection and proper attribution of his work.

9. Plaintiff Pantone is the professional entity owned and operated by Felipe Pantone.

10. Felipe Pantone created, and Pantone owns, the original artworks titled "Optichromie 135 Z" and "W3 Dimensional 4":

| **SUBJECT ARTWORKS** |
|:---:|
| **Optichromie 135 Z** |
|  |

**W3 Dimensional 4**



11. Pantone complied in all respects with the Copyright Act, 17 U.S.C. § 101, *et. seq.*, and is the sole owner of the exclusive rights, title, interests, and privileges in and to the Subject Artworks, and has registered same with the United States Copyright Office.

12. Felipe Pantone has further created a number of artworks in a series featuring iterations of the original multicolored, gradient lightning bolt depicted in the Subject Artworks, including in collaboration with major commercial brands such as Kent Block and Hennesey Cognac. True and correct exemplars of these works are depicted below:

///

///

///

## Additional Artworks in the Series









13. Prior to the acts contained herein, Pantone displayed, marketed, and sold copies of the Subject Artworks and others in the series through its authorized

third-party distributors, direct to consumers through websites and galleries, and through brand collaborations.

14. Through extensive advertising, promotion, and publicity of the Subject Artworks and others in the series, Pantone has obtained and holds a trade dress protection in the overall appearance of the artworks bearing the signature multicolored lightning bolt design featured therein ("Subject Trade Dress").

15. The Subject Trade Dress consists of primarily nonfunctional trade dress elements, such as color combination, shapes, outlining combinations thereof, among other distinctive attributes shown herein.

16. Pantone has regularly displayed his art in the United States since 2016. The same year his iconic lightning bolt began being featured in his work. The symbol was found in Pantone's Las Vegas Mural, his Zenith and Hennessey Cognac collaborations soon after, as depicted above.

17. Pantone has spent substantial resources to advertise, market, and promote the Subject Trade Dress online, in galleries and through retailers across the world. As a result of continued and widespread commercial use and success, as well as advertising, publicity, and promotion, the consuming public has come to recognize Pantone's trade dress, as featured in the above artworks, that is nonfunctional and distinctive, and to associate it with a single source namely, Pantone.

18. The Subject Trade Dress has acquired secondary meaning, and consumers associate the trade dress exclusively with Pantone's collection. The Subject Artworks have acquired secondary meaning based on the evidence of intentional copying by Defendants, Pantone's established presence in the motor cross market, the lengthy duration of Pantone's substantial and continuous advertisement, sale and creation of the Subject Artworks and others in the series, prominent display of same by various large retailers, on social media, and large number of sales.

19. The strength and recognition of the Subject Trade Dress is evident from the considerable amount of publicity given to Pantone's artworks, including online and in-person retailers, sell-out shows and exhibits, social media, and news outlets discussing the quality and uniqueness of Pantone products.

20. Pantone has achieved valuable goodwill and secondary meaning in the Subject Trade Dress.

21. Defendants, and each of them, have willfully copied, reproduced, and distributed the Subject Artworks and the Subject Trade Dress for financial benefit by, without limitation, reproducing same for commercial benefit. True and correct copies and screen captures of Defendants' unauthorized uses are depicted below ("Infringing Products"). These copies and screen captures represent non-inclusive exemplars of the Infringing Products.

**INFRINGING PRODUCTS**





22. A comparison of the Infringing Products and the Subject Artworks reveals that the artworks are virtually identical in color, design, and overall aesthetic, as seen below:

**Comparison of Artworks**





23. The above comparison reveals that the elements, composition, colors, arrangement, and overall appearance of 100%'s Infringing Products and the copied portions of the Subject Painting are identical or at least substantially similar.

24. The designs on the Infringing Products further copy the recognizable look and appearance of the Subject Trade Dress for use on commercial products, allowing Defendants to trade off the good will garnered by Pantone and falsely imply association or endorsement by Pantone of Defendant's products.

25. At no time did Defendants ever seek or receive Pantone's authorization or consent to exploit the Subject Artworks or the Subject Trade Dress on the Infringing Products.

26. At no time has Pantone ever sought to associate itself or its designs with Defendants.

**FIRST CLAIM FOR RELIEF**

**(For Copyright Infringement – Against All Defendants, and Each)**

27. Pantone incorporates by reference the preceding paragraphs of this Complaint.

28. Upon information and belief, Defendants had access to the Subject Artwork, including through Plaintiff's website and social media accounts, or viewing the Subject Artworks on third-party websites or internet search engines.

29. Upon information and belief, Defendants copied, stored, distributed, displayed, and/or otherwise exploited the Subject Artworks on Defendants' Products without Pantone's permission.

30. Due to Defendants' acts of copyright infringement, Pantone has suffered damages to be established at trial.

31. Due to Defendants' acts of copyright infringement, Defendants have obtained profits they would not have realized but for their infringement of Plaintiff's copyrights in the Subject Artwork. As such, Plaintiff is entitled to disgorgement of Defendants' profits attributable to the infringement of Plaintiff's copyrights in the Subject Artwork, in an amount to be established at trial.

32. Upon information and belief, Plaintiff alleges that Defendants committed copyright infringement with actual or constructive knowledge of, or in reckless disregard or willful blindness for, Plaintiff's copyrights in the Subject Artwork, such that said acts of copyright infringement were willful.

## SECOND CLAIM FOR RELIEF

**(For Vicarious and/or Contributory Copyright Infringement – Against all Defendants, and Each)**

33. Pantone repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

34. Upon information and belief, Pantone alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Subject Artworks as alleged hereinabove. Such conduct included, without limitation, publishing copies obtained from third parties that Defendant(s) knew, or should have known, were not authorized to be published by Defendant(s); publishing the Infringing Products on affiliate, third-party, and

social media sites; and distributing the Infringing Products to third parties for further publication.

35. Upon information and belief, Pantone alleges that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, Defendants, and each of them, received revenue in connection with the Infringing Products, and were able to supervise the distribution and publication of said content.

36. By reason of the Defendants', and each of their, acts of contributory and vicarious infringement as alleged above, Pantone has suffered general and special damages in an amount to be established at trial.

37. Due to Defendants', and each of their, acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Pantone's rights in the Subject Artwork. As such, Pantone is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of his rights in the Subject Artwork, in an amount to be established at trial.

38. Upon information and belief, Pantone alleges that Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000.00 per infringement and/or a preclusion from asserting certain equitable and other defenses.

## THIRD CLAIM OF RELIEF

**(For Trade Dress Infringement, False Designation of Origin, and Unfair Competition (15 U.S.C. § 1125(a)) – Against all Defendants)**

39. Pantone repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

40. Defendants advertisements, promotions, offers to sell, sales, and distribution, manufacture, and/or importation of the Infringing Products constitute common law trade dress infringement, at least because Defendants use of Pantone's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin or sponsorship and affiliation of its Infringing Products, at least by creating the false and misleading impression that its Infringing Products are manufactured by, created by, authorized by, or otherwise associated with Pantone.

41. Pantone's trade dress is entitled to protection under common law. Pantone's Subject Trade Dress trade dress includes unique, distinctive, and nonfunctional and each of their inherently distinctive qualities have achieved high degree of consumer recognition and serve to identify Pantone as the source of the product bearing said Subject Trade Dress, as evidenced by the commercial uses of same lawfully conducted by Pantone as depicted above.

42. The aforementioned Subject Trade Dress is of such a unique and unusual quality that a consumer would immediately rely on said designs to differentiate the source of goods.

43. Pantone has extensively and continuously promoted and used its trade dress in the United States and internationally. Through that extensive and continuous use, Pantone's Subject Trade Dress has become a well-known indicator of the originality and quality of Pantone's products.

44. Pantone's Subject Trade Dress has acquired secondary meaning in the motorcross marketplace. Moreover, Pantone's trade dress acquired its secondary meaning long before Defendant commenced its unlawful use of Pantone's trade dress in connection with its Infringing Products.

45. Defendants have misappropriated several of Pantone's trade dress designs by copying several nonfunctional elements of the Subject Trade Dress.

46. Defendant's manufacture, promotion, and distribution of the Infringing Products containing elements that copies a combination of several elements of Pantone's Subject Trade Dress is likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection, or association of Infringing Products with the Pantone brand, or to the origin, sponsorship, or approval by Pantone of the Infringing Products.

47. Defendant's use of the Subject Trade Dress without authorization is in furtherance of its willful, deliberate, and bad faith scheme to trade upon extensive consumer goodwill and recognition Pantone has established in the trade dress, and sow consumer confusion between the parties and their products.

48. Defendant's use of Plaintiff's trade dress and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to the goodwill and reputation for quality associated with Pantone's trade dress, Pantone's products, and Pantone.

49. Defendant's manufacture, promotion, and distribution of the Infringing Products that copy a combination of several elements of the Subject Trade Dress enables Defendants to benefit unfairly from Pantone's reputation and success.

50. Defendant's use of the Subject Trade Dress is without authorization from Pantone and is likely to dilute the distinctive quality of the Pantone trade dress, decrease the capacity of that trade dress to identify and distinguish Pantone products and to cause harm to Pantone's business reputation. Defendants' acts complained of herein constitute trade dress dilution in violation of 15 U.S.C. § 1125(c).

51. Defendant's use of Pantone's Subject Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced, at least, by Defendants direct, continuous, and egregious copying of numerous works from Pantone's series and continued disregard for Pantone's rights.

52. Defendants have made and will continue to make, substantial profits and gain from its use of the Subject Trade Dress in the United States, to which they are not entitled in law or equity.

55. Pantone is entitled to injunctive relief and recovery of its actual damages, Defendants' profits, punitive damages, costs, and reasonable attorney's fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

a. That Defendants, each of them, their respective agents, and anyone working in concert with Defendants and/or their agents, be enjoined from using the Subject Artworks in a manner that infringes Plaintiff's copyrights in the same;

b. An order preliminarily and permanently enjoining Defendants and their officers, agents, affiliates, employees, and attorneys and all those persons acting or attempting to act in concert or participation with them, from: using any design similarly or likely to cause confusion with the Subject Trade Dress; using any false designation of origin or false description, including the appearance of its product, that can, or is likely to, lead the consuming public, or individual members thereof, to believe that any goods produced, advertised, promoted, marketed, provided, or sold by Defendants are in any manner associated or connected with Pantone, or are advertised, promoted, marketed, sold, licensed, sponsored, approved, or authorized by Pantone; committing any other unfair business practices directed toward or obtaining for themselves the business and customers of Pantone; and committing any other unfair business practices directed toward devaluing or diminishing Pantone's brand or business;

c. That Plaintiff be awarded all Defendants' profits, plus all Pantone's losses, attributable to Defendants' infringement of Plaintiff's copyrights in the Subject Artworks, the exact sum to be proven at trial; or alternatively, if elected, statutory damages under 17 U.S.C. § 504;

d. That a constructive trust be entered over any revenues or other proceeds realized by Defendants, and each of them, through their infringement of Pantone's intellectual property rights;

e. That Pantone be awarded its attorneys' fees as available under the Copyright Act U.S.C. § 505 and/or §1203;

f. That Pantone be awarded statutory and enhanced damages;

g. That Pantone be awarded its costs and fees under 17 U.S.C. § 505;

h. That Pantone be awarded pre-judgment interest as allowed; and

i. That Pantone be awarded such further relief as this Court finds proper.

## **JURY DEMAND**

Pantone demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Dated: June 10, 2025

DONIGER / BURROUGHS

By: */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
Andres Navarro, Esq.
*Attorneys for Plaintiff*